1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    BRANDON GENTRY,                              No. 2:22-cv-00720-DC-JDP

12                    Plaintiff,

13           v.                                    ORDER GRANTING IN PART AND
                                                   DENYING IN PART DEFENDANTS'
14    MANTECA POLICE DEPARTMENT, et                MOTION FOR SUMMARY JUDGMENT, OR
      al.,                                         IN THE ALTERNATIVE, PARTIAL
15                                                 SUMMARY JUDGMENT
                      Defendants.
16                                                 (Doc. No. 16)

17

18           This matter is before the court on Defendants' motion for summary judgment, or in the

19    alternative, partial summary judgment. (Doc. No. 16.) Pursuant to Local Rule 230(g), the pending

20    motion was taken under submission to be decided on the papers. (Doc. No. 17.) For the reasons

21    explained below, Defendants' motion will be granted in part and denied in part.

22                                          **BACKGROUND**

23           This civil rights action arises from Plaintiff's encounter with two local law enforcement

24    officers during a traffic stop, some of which was captured on the officers' body worn cameras.

25    /////

26    /////

27    /////

28    /////

                                                    1

1    **A.    Factual Background**[1]

2    On October 17, 2020, Plaintiff Brandon Gentry was driving a white 2020 Honda Accord

3    in Manteca, California with two passengers when he was pulled over by Defendants Devin

4    Brooks and Raul Hernandez, who were on duty as sworn California law enforcement officers for

5    Defendant Manteca Police Department. (DUF ¶¶ 1, 2, 4, 6, 8.) Specifically, at 10:27 p.m.,

6    approximately four hours after sunset (PUF ¶ 44), Defendant Brooks noticed that the front

7    windows of Plaintiff's vehicle were tinted and decided to stop the vehicle for violating California

8    Vehicle Code section 26708 (DUF ¶ 2). Defendant Brooks activated his lights and followed

9    Plaintiff's vehicle into a restaurant parking lot. (DUF ¶¶ 4–5.) At the time of the traffic stop, the

10   front windows of Plaintiff's vehicle were tinted. (DUF ¶ 3.)

11   Defendants Brooks and Hernandez both approached Plaintiff's parked vehicle in the

12   restaurant parking lot. (DUF ¶ 6.) As they approached, Defendant Brooks smelled "burnt"

13   marijuana coming from an open window of Plaintiff's vehicle.[2] (DUF ¶ 7.) Defendant Hernandez

14   saw a bullet on the lap of a passenger in the rear right seat of Plaintiff's vehicle. (DUF ¶ 8.)

15   Defendant Hernandez asked the passenger where the gun was located, and the passenger

16   responded that it was in his pocket. (DUF ¶¶ 8–9.) Defendant Hernandez secured the gun from

17   the passenger. (DUF ¶ 9.)

18   Defendant Brooks ordered Plaintiff to exit the vehicle. (DUF ¶ 11.) Plaintiff was holding a

19   small bag as he prepared to exit the vehicle but left the bag in the vehicle after being instructed to

20   do so by Defendant Brooks. (DUF ¶ 11.) Upon exiting the vehicle, Plaintiff was placed in

21   ───────────────

22   [1] This factual background is derived from the undisputed facts as stated by Defendants and
     responded to by Plaintiff (Doc. No. 16-2) ("DUF")), the additional undisputed facts as stated by
     Plaintiff (Doc. No. 25-1) ("PUF")), declarations and exhibits filed by the parties in support of
23   their respective briefs (Doc. Nos. 16-3, 16-4, 25-2), and body worn camera footage lodged with
     the court (Doc. Nos. 16-5, 26). Plaintiff stated his undisputed facts in his response to Defendants'
24   undisputed facts, concurrently filed with his opposition to the pending motion. (Doc. No. 25-1.)
     Plaintiff's undisputed facts are numbered 39 through 44, consecutively following Defendants'
25   undisputed facts numbered 1 through 38. (*Id.* at 10–11.) Defendants did not respond to Plaintiff's
     undisputed facts in their reply to the pending motion.
26
27   [2] Plaintiff does not dispute that Defendant Brooks smelled marijuana coming from an open
     window of Plaintiff's vehicle but disputes the "nature and quality of the smell" because "no
28   evidence is presented for this beyond the supposition of the officer." (Doc. No. 25-1 at 3.)

1  handcuffs alongside the other passengers and placed in the backseat of a patrol vehicle. (DUF

2  ¶ 12.)

3         After detaining Plaintiff, Defendant Brooks searched the bag Plaintiff left in the vehicle.

4  (DUF ¶ 13; PUF ¶ 40.) Plaintiff's bag contained a large amount of cash wrapped with rubber

5  bands. (DUF ¶ 13.) When Defendant Brooks showed Defendant Hernandez the contents of

6  Plaintiff's bag, Defendant Hernandez stated, "Holy fuck, dude." (PUF ¶ 40.) Defendant Brooks

7  and Defendant Hernandez also fist bumped each other. (PUF ¶ 41.) Thereafter, Defendant Brooks

8  motioned toward his body worn camera and stated "confidential." (PUF ¶ 42.) At that time, both

9  Defendant Brooks and Defendant Hernandez deactivated their body worn cameras. (PUF ¶ 42.)

10        The cash from Plaintiff's bag was placed into another bag, stored in a lock box in the back

11  of Defendant Brooks's patrol vehicle, and brought to the police station for counting. (DUF ¶ 22.)

12  The parties dispute the amount of cash found in Plaintiff's bag. A Manteca Police Department

13  sergeant, who ran the cash through an automatic money counter at the police station while

14  Defendant Brooks and Defendant Hernandez were present, determined the total was $73,032.

15  (DUF ¶¶ 23–24.) Plaintiff asserts he had $100,000 in his bag at the time he was detained (DUF

16  ¶ 25) and thus, $26,000 was missing when the money was counted at the police station (PUF ¶

17  43).

18        In addition to that bag containing cash, officers on the scene located marijuana in the

19  trunk of Plaintiff's vehicle. (DUF ¶ 14.) Specifically, officers located 25 individual packets of

20  marijuana, each marked with a net weight of 3.5 grams, for a total net weight of 87.5 grams.

21  (DUF ¶ 14.)

22        Following the search of Plaintiff's vehicle, Defendant Brooks noticed that Plaintiff was

23  sweating in the back of the patrol vehicle. (DUF ¶ 15.) Defendant Brooks tried "water-falling"

24  water into Plaintiff's mouth, but it splashed on Plaintiff. (DUF ¶ 15–16.) Defendant Brooks asked

25  Plaintiff if he wanted to exit the patrol vehicle to drink water. (DUF ¶ 16.) Once Plaintiff was

26  outside of the vehicle, Defendant Brooks started to pour water into Plaintiff's mouth. (DUF ¶¶ 17,

27  29.) Defendant Brooks did not apply a control hold to Plaintiff when he was outside of the vehicle

28  in handcuffs. (DUF ¶ 29.) Then Plaintiff suddenly collapsed to the ground, shaking and foaming

1    around his mouth. (DUF ¶ 17.)

2        While Plaintiff was on the ground, Defendant Brooks asked Plaintiff if he experiences

3    seizures and had just had a seizure. (DUF ¶¶ 18–19.) The parties dispute whether Plaintiff was

4    able to respond to Defendant Brooks's questions regarding seizures. While Defendants assert that

5    Plaintiff responded to Defendant Brooks's questions in the affirmative (DUF ¶ 18), Plaintiff

6    disputes he was "able to respond during his seizure" or "that he in fact knowingly and

7    intelligently responded to the officer" (Doc. No. 25-1 at 6).

8        Following his collapse, Plaintiff was transported to the hospital by ambulance. (DUF

9    ¶ 20.) Plaintiff told a doctor at the hospital that he has seizures and takes an anti-epileptic drug for

10   seizures but missed several doses because his jaw had been wired shut after he was shot in the

11   neck in an unrelated incident. (DUF ¶ 21.)

12       Because Plaintiff was transported to the hospital following the traffic stop, rather than

13   hand Plaintiff the citations, Defendant Brooks mailed to Plaintiff the citations for a violation of

14   California Vehicle Code section 26708 (tinted windows), and misdemeanor violations of

15   California Health and Safety Code section 11359(b) (possession of cannabis for sale) and

16   11360(a) (transportation of cannabis). (DUF ¶ 26.)

17   **B.    Procedural Background**

18       On April 26, 2022, Plaintiff filed a complaint initiating this action against Defendants

19   Manteca Police Department, Officer Devin Brooks, and Officer Raul Hernandez (collectively,

20   "Defendants"). (Doc. No. 1.) In his complaint, Plaintiff asserts two causes of action against

21   Defendant Manteca Police Department: a federal claim pursuant to 42 U.S.C. § 1983 for violating

22   Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution,

23   and a state law claim for negligent hiring, retention, training, supervision, and discipline. (*Id.* at

24   6–12.) In addition, Plaintiff asserts five causes of action against Defendants Brooks and

25   Hernandez: a federal claim under § 1983 for violating Plaintiff's rights under the Fourth, Fifth,

26   and Fourteenth Amendments to the U.S. Constitution, and state law claims for conversion,

27   intentional infliction of emotional distress, negligent infliction of emotional distress, and

28   negligence. (*Id.*)

On June 8, 2022, the court granted Plaintiff's request to voluntarily dismiss his § 1983 claim against Defendant Manteca Police Department. (Doc. No. 9.) The only claim remaining against Defendant Manteca Police Department is Plaintiff's state law claim for negligent hiring, retention, training, supervision, and discipline.

On July 1, 2024, Defendants filed the pending motion for summary judgment, or in the alternative, partial summary judgment. (Doc. No. 16.) On July 26, 2024, Plaintiff filed an opposition to Defendants' motion for summary judgment. (Doc. No. 25.) On August 8, 2024, Defendants filed their reply thereto. (Doc. No. 32.)

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *Id.* at 255.

The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). "Where a defendant moves for summary judgment based on an affirmative defense (*i.e.*, an issue on which it bears the burden of proof), the defendant must establish 'all of the essential elements of the . . . defense to warrant judgment in [its] favor.'" *Menzel v. Scholastic, Inc*., No. 3:17-cv-

1 | 05499-EMC, 2019 WL 6896145, at *2 (N.D. Cal. 2019) (citation omitted).

2 |   If the moving party meets its initial responsibility, the burden then shifts to the nonmoving

3 | party to establish that a genuine issue as to any material facts exists. *Matsushita Elec. Indus. Co.*

4 | *v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*,

5 | 391 U.S. 253, 288–89 (1968). The nonmoving party may not rely upon the allegations or denials

6 | of its pleadings but is required to tender evidence of specific facts in the form of affidavits or

7 | admissible discovery material in support of its contention that the dispute exists. *See* Fed. R. Civ.

8 | P. 56(c)(1); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can

9 | only consider admissible evidence in ruling on a motion for summary judgment."). The

10 | nonmoving party does not need to establish a material issue of fact conclusively in its favor to

11 | establish a factual dispute. It is sufficient that "the claimed factual dispute be shown to require a

12 | jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of*

13 | *Ariz.*, 391 U.S. at 288–89.

14 | **ANALYSIS**

15 | **A.      Section 1983 Claim**

16 |   Under § 1983, "[e]very person who, under color of any [state law] subjects, or causes to

17 | be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or

18 | immunities secured by the Constitution . . . shall be liable to the party injured . . . ."  42 U.S.C.

19 | § 1983. The statute "'is not itself a source of substantive rights,' but merely provides 'a method

20 | for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994)

21 | (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)). To state a claim under § 1983, a

22 | plaintiff must establish: (1) he was deprived of a right secured by the Constitution, and (2) the

23 | alleged deprivation was committed under color of state law. *Azer v. Connell*, 306 F.3d 930, 935

24 | (9th Cir. 2002).

25 |   In his complaint, Plaintiff alleges that Defendants Brooks and Hernandez violated his

26 | "right to be free from unreasonable searches and seizures" under the Fourth and Fourteenth

27 | Amendments, his "right to not be deprived of property without due process of law" under the

28 | Fifth and Fourteenth Amendments, and his "right to equal protection of the laws" under the

1    Fourteenth Amendment. (Doc. No. 1 at 6–7.) Plaintiff's complaint does not specifically allege

2    how the conduct of Defendants Brooks and Hernandez during the traffic stop violated Plaintiff's

3    constitutional rights, so Plaintiff's theory of liability is not entirely clear.

4         In the pending motion, Defendants Brooks and Hernandez contend they are entitled to

5    summary judgment on Plaintiff's § 1983 claim because they did not violate any of Plaintiff's

6    constitutional rights by stopping his vehicle for a traffic violation, ordering him out of his vehicle,

7    placing him in handcuffs, detaining him in the back of a patrol vehicle, or not using a control hold

8    while giving him water. (Doc. No. 16-1 at 5–8.) Defendants Brooks and Hernandez further argue

9    they are entitled to qualified immunity with respect to Plaintiff's claim to the extent it is based on

10   allegations that they stole money from his bag because they "could not have known at the time

11   the theft was a violation of a constitutional right." (*Id.* at 8.)

12        In his opposition to the pending motion, Plaintiff argues only that there is "a material

13   question of fact remaining as to whether the officers [] had probable cause to stop his vehicle,"

14   and that Defendants Brooks and Hernandez are not entitled to qualified immunity because "no

15   reasonable officer in the year 2020 could have believed that theft of $26,000.00 of evidence

16   during an investigation 'was lawful.'" (Doc. No. 25 at 7–9.) Plaintiff does not explicitly address

17   how Defendants Brooks and Hernandez violated his constitutional rights by ordering him out of

18   his vehicle, placing him in handcuffs, detaining him in the back of a patrol vehicle, or failing to

19   use a control hold while giving him water. Plaintiff merely states that "because the issue of the

20   facts surrounding the probable cause for [the traffic] stop is potentially dispositive of most, if not

21   all, of the legal and constitutional issues here . . . these questions thus become ones of fact for a

22   jury, rather than of law for the court." (*Id.* at 7.) As Defendants note in their reply, "[i]t appears

23   Plaintiff is arguing that the facts underlying the traffic stop are disputed and thus, all contact and

24   interactions between Plaintiff and [Defendants Brooks and Hernandez] after the traffic stop are

25   necessarily disputed." (Doc. No. 32 at 5.)

26        As this civil case involves § 1983 claims for constitutional violations, Plaintiff's

27   arguments are misplaced. "It is widely acknowledged [] that '[t]he fruit of the poisonous tree

28   doctrine . . .  is inapplicable to civil § 1983 actions.'" *Orellana v. Cnty. of Los Angeles*, No. 12-

7

1    cv-01944-MMM-CW, 2013 WL 12122692, at *6 (C.D. Cal. Apr. 29, 2013), *aff'd*, 630 F. App'x

2    730 (9th Cir. 2016). "When a plaintiff seeks to recover damages for injuries suffered during

3    successive steps of state action—e.g., search, arrest, interrogation, detention, and trial—each

4    stage of conduct must be separately judged by the constitutional standard applicable to the

5    particular right violated, whether Fourth, Fifth, or Fourteenth Amendment. . . ." *Reich v.*

6    *Minnicus*, 886 F. Supp. 674, 685 (S.D. Ind. 1993). "However, a plaintiff who suffers a

7    constitutional deprivation early-on may, under § 1983, recover for his later injuries, even during

8    later constitutional stages in the process, if the injuries are reasonably foreseeable consequences

9    of the earlier deprivation of rights." *Id.* at 685.

10        Plaintiff has not raised any genuine dispute of material fact regarding the constitutionality

11   of Defendants Brooks and Hernandez conduct in ordering him out of his vehicle, placing him in

12   handcuffs, detaining him in the back of a patrol vehicle, or failing to use a control hold while

13   giving him water. Nor has Plaintiff demonstrated that injuries he suffered were a reasonably

14   foreseeable consequence of Defendants Brooks and Hernandez stopping him for a traffic

15   infraction in violation of the Fourth Amendment. *See Orellana*, 2013 WL 12122692, at *6 ("[I]t

16   is not sufficient for [a plaintiff] to show that [a] traffic stop was unconstitutional in order to

17   recover damages resulting from [their] arrest. [Plaintiff] must also show that the arrest was

18   unconstitutional, or that the later injuries were reasonably foreseeable consequences of the

19   unconstitutional traffic stop."); *see also Reyes v. City of Glendale*, No. 05-cv-0253-CAS, 2009

20   WL 2241602, *14 (C.D. Cal. July 23, 2009) ("The [c]ourt agrees that plaintiff has failed to

21   present evidence that the traffic stop was unreasonable, and that, even if it were, this would not

22   render plaintiff's entire detention unreasonable. Therefore, plaintiff may not rely on the initial

23   stop to survive summary judgment."). Accordingly, to the extent that Plaintiff's § 1983 claim for

24   constitutional violations is predicated on Defendants Brooks and Hernandez ordering him out of

25   his vehicle, placing him in handcuffs, detaining him in the back of a patrol vehicle, or not using a

26   control hold while giving him water, the court will grant Defendants' motion for summary

27   judgment on that claim.

28        As for whether Defendants Brooks and Hernandez are entitled to summary judgment on

1    Plaintiff's § 1983 claim to the extent it is predicated on the constitutionality of the traffic stop and

2    alleged theft of money from Plaintiff's bag, the court addresses the parties' respective arguments

3    below.

4              1.    Traffic Stop for Tinted Windows

5              The Fourth Amendment protects against "unreasonable searches and seizures." U.S.

6    Const. amend. IV. A traffic stop "constitute[s] a 'seizure' within the meaning" of the Fourth

7    Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Under the Fourth Amendment, "an

8    officer [can] initiate a brief investigative traffic stop" based on "reasonable suspicion," meaning

9    "a particularized and objective basis for suspecting the particular person stopped of criminal

10   activity." *Kansas v. Glover*, 589 U.S. 376, 380 (2020); *see also United States v. Lopez-Soto*, 205

11   F.3d 1101, 1104–05 (9th Cir. 2000) (requiring reasonable suspicion for investigative traffic

12   stops). The reasonable suspicion standard "is not a particularly high threshold to reach." *United*

13   *States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc). Reasonable suspicion

14   requires more than a "mere 'hunch,'" but "the level of suspicion the standard requires is

15   considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously

16   less than is necessary for probable cause." *Glover*, 589 U.S. at 380 (citation omitted); *see also*

17   *Whren v. United States*, 517 U.S. 806, 810 (1996) (the decision to stop a vehicle is also

18   reasonable "where the police have probable cause to believe that a traffic violation has

19   occurred").

20             California Vehicle Code section 26708(a) provides: "A person shall not drive any motor

21   vehicle with any object or material placed, displayed, installed, affixed or applied upon the

22   windshield or side or rear windows." Cal. Veh. Code § 26708(a)(1). However, "clear, colorless,

23   and transparent material may be installed, affixed, or applied to the front side windows, located to

24   the immediate left and right of the front seat if the following conditions are met: (1) [t]he material

25   has a minimum visible light transmittance of 88 percent (2) [t]he window glazing with the

26   material applied meets all requirements of Federal Motor Vehicle Safety Standard No. 205 (49

27   C.F.R. 571.205), including the specified minimum light transmittance of 70 percent . . . ." Cal.

28   Veh. Code § 26708(d).

1    Defendants Brooks and Hernandez argue that they did not violate Plaintiff's Fourth

2    Amendment right to be free from unreasonable searches and seizures by conducting a traffic stop

3    on Plaintiff's vehicle because the traffic stop was supported by probable cause, or at minimum,

4    reasonable suspicion. (Doc. Nos. 16-1 at 6; 32 at 3.) In the pending motion, Defendants Brooks

5    and Hernandez argue that they had probable cause to stop Plaintiff's vehicle for having front

6    tinted windows in violation of California Vehicle Code section 26708. (Doc. Nos. 16-1 at 6.)

7    Defendants Brooks and Hernandez emphasize that Plaintiff stated at his deposition that his

8    vehicle's front windows were tinted at the time of the stop. (*Id.*)

9    In his opposition to the pending motion, Plaintiff asserts that there is a material question

10    of fact as to whether Defendants Brooks and Hernandez had probable cause to stop his vehicle.

11    (Doc. No. 25 at 6.) Plaintiff contends that California Vehicle Code section 26708 prohibits

12    excessive tinting of windows, but not all tinting, meaning "tinting is not the violation, the amount

13    of tinting is." (*Id.*) Plaintiff argues Defendants Brooks and Hernandez have not provided

14    "evidence on the nature or extent of the tinting on [Plaintiff's] vehicle" or "evidence on what they

15    perceived or observed," beyond the fact that the windows were tinted. (*Id.* at 7.) Plaintiff further

16    argues there are "facts and evidence . . . in the record (the video, time of night, etc.)" that

17    contradict Defendant Brooks's and Defendant Hernandez's account that they had probable cause

18    to conduct a traffic stop. (*Id.*) Namely, Defendants Brooks and Hernandez pulled Plaintiff over

19    for a traffic stop around 10:30 p.m. at night and "windows to Plaintiff's vehicle were down"

20    during the stop, "rendering the officers unable to see what tinting, if any, the windows in fact

21    had." (*Id.*)

22    In their reply, Defendants Brooks and Hernandez argue that the traffic stop was conducted

23    based on Defendant Brooks's observation that Plaintiff's vehicle had tinted windows prior to the

24    stop, and "[t]hat is all that is required to establish reasonable suspicion of a violation [of]

25    California Vehicle Code section 26708." (Doc. No. 32 at 3.)

26    As Plaintiff emphasizes, not all tinting is illegal under California Vehicle Code section

27    26708. "[W]hile excessively-tinted windows are illegal, California law permits tinting of the

28    windshield and front driver and passenger side windows where the tinting permits light

transmittance of at least 70 percent and meets the other requirements of [section] 26708(d)(2)."

*United States v. Ybarra*, No. 22-cr-00347-BLF-VKD, 2023 WL 4188219, at \*5 (N.D. Cal. May 3, 2023) (citing *United States v. Wallace*, 213 F.3d 1216, 1217, 1221 (9th Cir. 2000)). "Due to such statutory nuances, an officer cannot 'justify a traffic stop' with the bare-bones conclusion that a car's 'windows were tinted.'" *United States v. Salas*, 766 F. Supp. 3d 1069, 1073 (S.D. Cal. 2025). Instead, the relevant inquiry is whether Defendants Brooks and Hernandez "had a particularized and objective basis for suspecting that [Plaintiff's] vehicle had a window tinting that violated the California Vehicle Code." *Ybarra*, 2023 WL 4188219, at \*5–6; *see also Salas*, 766 F. Supp. 3d at 1073.

For example, in *United States v. Pullen*, No. 1:20-cr-00195-JLT, 2022 WL 4586177 (E.D. Cal. Sept. 29, 2022), the district court found that officers had reasonable suspicion to make a traffic stop based on tinted windows where they testified they "could not see clearly into the driver's window and saw, instead, a silhouette" when they viewed the vehicle sometime around 4:00 to 4:30 p.m., video footage from body worn cameras showed the windows were tinted, and photos taken by an officer demonstrated the opacity of the tint on the vehicle's windows. *Pullen*, 2022 WL 4586177, at \*3–4. The Ninth Circuit affirmed the district court, holding that officers "reasonably suspected illegal window tinting, because the windows were tinted to some degree and the windows appear[ed] to be overly tinted in at least some images." *United States v. Pullen*, No. 23-10036, 2024 WL 2843036, at \*2 (9th Cir. June 5, 2024). Likewise, in *Ybarra*, the district court concluded that an officer "had a particularized and objective basis for suspecting that [a] vehicle had unlawfully tinted windows" where he did not merely observe "some tint on the vehicle's windows" but rather observed "the windows appeared to [] be excessively dark, such that they did not permit a sufficiently clear view of the interior of the vehicle." *Ybarra*, 2023 WL 4188219, at \*7; *see also Adom v. City of Los Angeles*, No. 5:21-cv-00711-JFW-KES, 2023 WL 3958913, at \*7 (C.D. Cal. May 17, 2023), report and recommendation adopted, No. 5:21-cv-00711-JFW-KES, 2023 WL 3958883 (C.D. Cal. June 12, 2023), *aff'd*, No. 23-55558, 2025 WL 88846 (9th Cir. Jan. 14, 2025) (officers had reasonable suspicion to justify initiating a traffic stop for illegally tinted windows where "[t]he tint was so dark, [one officer] could not see inside the

1     vehicle, consistent with an illegal level of tint based on his experience").

2         Here, Defendants' argument that the traffic stop of Plaintiff's vehicle was supported, at

3     minimum, by reasonable suspicion because Defendant Brooks observed Plaintiff's vehicle had

4     tinted windows prior to the stop, and Plaintiff later admitted his windows were tinted, is

5     misplaced. The fact that Plaintiff's vehicle had windows that were tinted is not sufficient, on its

6     own, to establish reasonable suspicion of a violation of California Vehicle Code section 26708,

7     because that statute does not prohibit all tinting. Rather, Defendants Brooks and Hernandez must

8     demonstrate a particularized and objective basis for suspecting Plaintiff's vehicle had a window

9     tinting that violates California Vehicle Code section 26708. As Plaintiff argues, there remains a

10     genuine dispute of material fact regarding Defendant Brooks's and Defendant Hernandez's

11     observations prior to the stop, beyond the undisputed fact that Plaintiff's windows were tinted.

12     (*See* Doc. No. 25 at 7.) For instance, Plaintiff calls into question whether Defendant Brooks could

13     have observed the tint on Plaintiff's windows because the traffic stop occurred at night, several

14     hours after sunset, and Plaintiff's windows were down during the stop. (*Id.* at 6–7); *see e.g.*,

15     *Pullen*, 2022 WL 4586177, at *4 (noting "it is within the common experience that lighting can

16     impact how dark window tinting appears"). Thus, when viewed in a light most favorable to

17     Plaintiff as the nonmoving party, this evidence creates a genuine dispute of fact as to whether

18     Defendants Brooks and Hernandez had reasonable suspicion to stop Plaintiff's vehicle for having

19     illegally tinted windows in violation of California Vehicle Code section 26708.

20         Accordingly, the court will deny Defendants' motion for summary judgment on Plaintiff's

21     § 1983 claim to the extent that claim is predicated on the constitutionality of the traffic stop.

22         2.     <u>Alleged Unreasonable Seizure (Theft of Plaintiff's Money)</u>

23         "Qualified immunity protects government officials from liability for civil damages unless

24     their conduct violates 'clearly established statutory or constitutional rights of which a reasonable

25     person would have known.'" *Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019)

26     (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In cases where the defense of qualified

27     immunity is raised, the plaintiff must show that "(1) the official violated a statutory or

28     constitutional right, and (2) that the right was clearly established at the time of the challenged

1  conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). A district court may exercise its

2  discretion to analyze the qualified immunity prongs in either order, and the resolution of the

3  second prong may obviate the need to address the first. *Pearson v. Callahan*, 555 U.S. 223, 236

4  (2009).

5        "A clearly established right is one that is 'sufficiently clear that every reasonable official

6  would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7,

7  11–12 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Although "a case directly

8  on point" is not required, "existing precedent must have placed the statutory or constitutional

9  question beyond debate." *Ashcroft*, 563 U.S. at 741. "Plaintiffs must point to prior case law that

10 articulates a constitutional rule specific enough to alert these deputies in this case that their

11 particular conduct was unlawful. To achieve that kind of notice, the prior precedent must be

12 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a

13 'consensus' of courts outside the relevant jurisdiction." *Sharp v. County of Orange*, 871 F.3d 901,

14 911 (9th Cir. 2017) (citing *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

15       "In cases alleging unreasonable searches or seizures, [the Supreme Court has] instructed

16 that courts should define the 'clearly established' right at issue on the basis of the 'specific

17 context of the case.'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Saucier v. Katz*, 533

18 U.S. 194, 201 (2001)). The Supreme Court has "repeatedly told courts—and the Ninth Circuit in

19 particular—not to define clearly established law at a high level of generality." *Ashcroft*, 563 U.S.

20 at 742. "The dispositive question is 'whether the violative nature of *particular* conduct is clearly

21 established.'" *Mullenix*, 577 U.S. at 12 (quoting *Ashcroft*, 563 U.S. at 742) (emphasis in original).

22 Thus, this inquiry must be undertaken in light of the specific context of the particular case, rather

23 than as a broad general proposition. *Id.*

24       According to Plaintiff, after searching his bag during the traffic stop, Defendants Brooks

25 and Hernandez "took approximately $25,000 of Plaintiff's money and booked [the remaining]

26 $73,032 into evidence" in violation of his constitutional rights. (Doc. No. 1 at ¶ 36.) Defendants

27 Brooks and Hernandez deny they stole money from Plaintiff "at any point during the traffic stop,

28 arrest, or when the money was seized," but argue "even if the allegations are assumed to be true,"

1   they are entitled to qualified immunity because they "could not have known at the time the theft

2   was a violation of a constitutional right based on *Jessop v. City of Fresno*, 936 F.3d 937 (9th Cir.

3   2019)." (Doc. No. 16-1 at 8.)

4           In *Jessop*, officers executed a search warrant on three of the plaintiffs' properties as part

5   of an investigation into illegal gambling machines. *Jessop*, 936 F.3d at 939. Following the search,

6   officers claimed they had seized approximately $50,000 from the properties, but the plaintiffs

7   alleged "that the officers had actually seized $151,380 in cash and another $125,000 in rare

8   coins" and "stole the difference." *Id.* at 939–40. The plaintiffs brought suit against the officers

9   who conducted the search, alleging § 1983 claims for Fourth and Fourteenth Amendment

10  violations. *Id.* at 940. The officers moved for summary judgment based on qualified immunity. *Id.*

11  The district court granted the officers' motion on the basis that "any alleged theft of property

12  which was initially lawfully seized from plaintiffs pursuant to a valid search warrant did not

13  violate their then clearly established Fourth Amendment rights." *Jessop v. City of Fresno*, No.

14  1:15-cv-00316-DAD-SAB, 2017 WL 3264039, at *8 (E.D. Cal. Aug. 1, 2017), *aff'd*, 918 F.3d

15  1031 (9th Cir. 2019). The Ninth Circuit affirmed the district court, holding that plaintiff "failed to

16  show that it was clearly established that the [officers] alleged conduct violated the Fourth

17  Amendment." *Jessop*, 936 F.3d at 942. The Ninth Circuit reasoned that "[i]t has never addressed

18  whether the theft of property covered by the terms of a search warrant, and seized pursuant to that

19  warrant, violates the Fourth Amendment." *Id.* at 941. The Ninth Circuit noted that only the Fourth

20  Circuit had addressed the question and did so in an unpublished decision. *Id.* "The lack of 'any

21  cases of controlling authority' or a 'consensus of cases of persuasive authority' on the

22  constitutional question compel[ed] the conclusion that the law was not clearly established at the

23  time of the incident." *Id.* at 942. In other words, "[a]lthough the [officers] ought to have

24  recognized that the alleged theft of [the plaintiffs] money and rare coins was morally wrong, they

25  did not have clear notice that it violated the Fourth Amendment—which . . . [was] a different

26  question." *Id.* Because there was no clearly established right, the Ninth Circuit did not reach the

27  question of whether the alleged theft was in fact a constitutional violation. *Id.* at 942 ("[W]e need

28  not decide whether the [] [o]fficers violated the Fourth Amendment.").

1    In his opposition to the pending motion, Plaintiff argues that Defendants Brooks and

2    Hernandez "knew, or should have known, and constitutionally *must* have known their theft of the

3    $26,000.00 violated the [Fourth] [A]mendment," pursuant to *Brewster v. Beck*, 859 F.3d 1194

4    (9th Cir. 2017). In *Brewster*, officers impounded the plaintiff's vehicle because plaintiff had a

5    suspended license. *Brewster*, 859 F.3d at 1195. When the plaintiff "appeared at a hearing . . . with

6    proof that she was the registered owner of the vehicle and her valid California driver's license,"

7    the government "refused to release the vehicle before [a] 30-day holding period had lapsed." *Id.*

8    Although the district court found that the seizure of the plaintiff's vehicle did not "present a

9    Fourth Amendment problem because 'the state has an important interest in . . . keeping

10   unlicensed drivers from driving illegally," the Ninth Circuit disagreed. *Id.* at 1197. The Ninth

11   Circuit reasoned that "[b]ecause a 30-day impound is a 'meaningful interference with an

12   individual's possessory interests in [his] property,'" the Fourth Amendment was implicated by the

13   government's actions. *Id.* at 1197. "The exigency that justified the seizure [of the plaintiff's

14   vehicle] vanished once the vehicle arrived in impound and [the plaintiff] showed up with proof of

15   ownership and a valid driver's license." *Id.* Thus, the government's impoundment of the vehicle

16   "constituted a seizure that required compliance with the Fourth Amendment." *Id.* at 1196–97.

17   Plaintiff argues that *Brewster* "must control: if the rote 30-day seizure of a citizens'

18   vehicle for 30 days is constitutionally infirm—because the government's justification for the

19   continued seizure had evaporated—then [Defendant] Brooks'[s] and [Defendant] Hernandez's

20   *private pecuniary purpose* in seizing, holding, and possessing Plaintiff's $26,000.00 *in perpetuity*

21   must, by force of logic, violate the constitution all the same." (Doc. No. 25 at 8.) Plaintiff points

22   out that the court in *Jessop* recognized the import of *Brewster* in suggesting that an officer's

23   alleged theft could implicate the Fourth Amendment. (*Id.*); *see also Jessop*, 936 F.3d at 941-42.

24   However, *Jessop* held that "[e]ven if the facts and reasoning of *Brewster* would dictate the

25   outcome [of *Jessop*], . . . [*Brewster*] was not clearly established law when the [officers] executed

26   the search warrant" at issue in 2013 since *Brewster* was decided in 2017. *Jessop*, 936 F.3d at 942.

27   Plaintiff insists that "[b]ecause *Brewster* was decided in 2017, and [Defendants Brooks and

28   Hernandez] stole Plaintiff's money in 2020," the law was clearly established for the purposes of

15

1    this case. (Doc. No. 25 at 9.)

2        Plaintiff's reliance on *Brewster* to demonstrate that the law clearly establishes Defendant

3    Brooks's and Defendant Hernandez's alleged theft violated the Fourth Amendment is unavailing.

4    As the Ninth Circuit noted in *Jessop*, "*Brewster*'s reasoning suggests that [an officer's] alleged

5    theft of [a plaintiff's] property could [] implicate the Fourth Amendment." *Jessop*, 936 F.3d at

6    941. However, "*Brewster*'s facts vary in legally significant ways from those in this case" because

7    *Brewster* "concerned the government's impoundment of a vehicle," whereas Plaintiff argues "that

8    [Defendants Brooks and Hernandez] stole [his] property." *See id.* Plaintiff fails to point to any

9    case law that "articulates a constitutional rule specific enough to [Defendants Brooks and

10   Hernandez] in this case that their particular conduct was unlawful." *See Sharp*, 871 F.3d at 911.

11   Absent controlling precedent or a consensus of cases on the issue presented by this case, the court

12   concludes that any alleged theft by Defendants Brooks and Hernandez during the traffic stop of

13   Plaintiff's vehicle did not violate Plaintiff's "clearly established" Fourth Amendment rights.[3]

14   Thus, Defendants Brooks and Hernandez are entitled to qualified immunity on this claim.

15       Therefore, the court will grant Defendants' motion for summary judgment on Plaintiff's

16   § 1983 claim to the extent that claim is predicated on the alleged theft of Plaintiff's money.

17   **B.    Conversion Claim**

18       Defendants Brooks and Hernandez move for summary judgment on Plaintiff's conversion

19   claim on the basis that they are immune from liability under California Government Code section

20   822. (Doc. No. 16-1 at 9.) California Government Code section 822 provides that "[a] public

21   employee is not liable for money stolen from his official custody," but is not "exonerate[d] . . .

22   from liability if the loss was sustained as a result of his own negligent or wrongful act or

23   omission." Cal. Gov't Code § 822.

24       Defendants Brooks and Hernandez argue that "[t]o prove a claim for conversion[,] the

25   Plaintiff must show that after [the money] was seized pursuant to his arrest[,] one or both

26

27   ───────────────

[3] Having concluded that Defendants Brooks and Hernandez did not violate a clearly established
Fourth Amendment right, the court does not reach a determination as to whether the alleged theft
28   of Plaintiff's money in fact violated the Fourth Amendment.

1   [o]fficers actually took the money he claims is missing." (Doc. No. 16-1 at 9.) In their view,

2   "Plaintiff's claim is based solely on his belief he had exactly $100,000 in his bag at the time of

3   the stop." (*Id.*) Defendants Brooks and Hernandez contend "Plaintiff has no evidence that [they]

4   (or anyone else) took any portion of the money seized from him." (*Id.*) Defendants Brooks and

5   Hernandez further contend that Plaintiff has failed to provide "evidence as to the identity of the

6   alleged thief as required to prove [a claim for conversion]." (Doc. No. 32 at 8.)

7        Plaintiff argues that Defendants Brooks and Hernandez are not immune from liability

8   under California Government Code section 822 because there is a genuine dispute of material

9   facts as to "whether [Defendants] Brooks and Hernandez caused [] theft by their 'negligence or

10  wrongful act or omission." (Doc. No. 25 at 9.) Specifically, Plaintiff argues that "he has testified

11  [at his deposition] that he had $26,000.00 stolen by [Defendants Brooks and Hernandez]" and his

12  "testimony *is* evidence, and this evidence controverts the facts surrounding the precise caveat" in

13  California Government Code section 822, that a public employee is not immune if a "loss was

14  sustained as a result of his own negligence or wrongful act or omission." (*Id.*)

15       The court agrees with Plaintiff that there is a genuine dispute of material facts as to

16  whether Defendants Brooks and Hernandez caused theft by their "negligence or wrongful act or

17  omission," such that they are not immune to liability under California Government Code section

18  822. Although Defendants Brooks and Hernandez contend Plaintiff has no evidence that they

19  took any portion of the money seized from him, Plaintiff's testimony is evidence. Plaintiff asserts

20  that he had $100,000 in the bag inside of his vehicle. (DUF ¶ 25.) It is undisputed that when a

21  sergeant from Defendant Manteca Police Department ran the money through an automatic money

22  counter following the traffic stop, the total was $73,032. (DUF ¶¶ 23–24.) Plaintiff deduces

23  Defendants Brooks and Hernandez stole the difference (approximately $26,000.00) during the

24  search of his vehicle. (Doc. No. 25 at 9) (citing Plaintiff's deposition testimony). A reasonable

25  trier of fact could find based on Plaintiff's testimony, coupled with the video footage of the

26  reaction and statements made by Defendants Brooks and Hernandez upon finding the bag of

27  money, that money was missing from Plaintiff's bag following the traffic stop as a result of

28  Defendant Brooks's and Defendant Hernandez's wrongful conduct. Thus, Defendants Brooks and

1  Hernandez have not met their burden of showing that they are entitled to immunity under

2  California Government Code section 822 as to Plaintiff's conversion claim.

3      Therefore, the court will deny Defendants' motion for summary judgment on Plaintiff's

4  conversion claim.

5  **C.    Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional**

6      **Distress, and Negligence**

7      Defendants Brooks and Hernandez similarly move for summary judgment on Plaintiff's

8  claims of intentional infliction of emotional distress, negligent infliction of emotional distress,

9  and negligence on the basis that they are immune from liability under California Government

10  Code section 820.4. (Doc. No. 16-1 at 10–11.) California Government Code section 820.4

11  provides that "[a] public employee is not liable for his act or omission, exercising due care, in the

12  execution or enforcement of any law," but is not "exonerate[d] . . . from liability for false arrest or

13  false imprisonment." Cal. Gov't Code § 820.4.

14      Defendants Brooks and Hernandez argue that undisputed evidence demonstrates they

15  acted with "due care" in their interactions with Plaintiff. (Doc. No. 16-1 at 10-11.) To support

16  their argument, Defendants Brooks and Hernandez rely on the declaration of their police practices

17  expert, Travis Norton, who previously worked for the Oceanside California police department

18  and retired as a lieutenant overseeing professional standards unit/training. (Doc. No. 16-4.) In his

19  declaration, Mr. Norton opines that Defendant Brooks's and Defendant Hernandez's conduct was

20  in accordance with California Peace Officer Standards and Training ("POST"). (*Id.*) Specifically,

21  Mr. Norton opines that Defendants Brooks and Hernandez followed POST regulations in stopping

22  Plaintiff for a violation of California Vehicle Code section 26708, detaining Plaintiff, handcuffing

23  Plaintiff, placing Plaintiff in the back of a patrol car, and providing Plaintiff water without a

24  control hold. (*Id.* at 3–8.) Defendants Brooks and Hernandez contend that Plaintiff has not

25  presented any expert testimony to contradict Mr. Norton's declaration or raise a triable issue of

26  fact as to the issues on which he has opined. (Doc. No. 32 at 5–6.)

27      In his opposition to the pending motion, Plaintiff argues Defendants Brooks and

28  Hernandez are not immune from liability under California Government Code section 820.4

because "[d]ue care is [] a question of fact." (Doc. No. 25 at 9.) Specifically, Plaintiff argues there are material questions of fact regarding whether Defendants Brooks and Hernandez "acted properly in not holding or supporting Defendant as he had a seizure and fell," "while they were 'waterfalling' water into his mouth" without a control hold, and "whether stealing $26,000.00 of evidence was done in 'due care' during the 'execution' of the laws of the State of California." (*Id.*)

Here too, the court agrees with Plaintiff that there are genuine disputes of material fact as to whether Defendants Brooks and Hernandez exercised "due care" in their interactions with Plaintiff. Although Defendants Brooks and Hernandez insist that Mr. Norton's declaration regarding POST standards conclusively establishes that they acted with due care, a reasonable trier of fact could draw other inferences and come to an alternative conclusion. As discussed above, a reasonable trier of fact could conclude that money was missing from Plaintiff's bag as a result of Defendant Brooks's and Defendant Hernandez's wrongful conduct and thus done in the absence of due care. Likewise, a reasonable trier of fact could conclude that Defendants Brooks and Hernandez did not exercise due care when providing Plaintiff with water because no control hold was applied. *See J.A. v. Madera County*, No. 1:21-cv-00252-ADA-EPG, 2023 WL 425819, at *8 n.7 (E.D. Cal. Jan. 26, 2023) ("Logically, the exercise of due care required by [California Government Code section 820.4] presupposes the employee was not negligent or acting in an intentionally injurious manner.") (citation omitted). Because there are fact issues as to whether Defendants Brooks and Hernandez exercised due care, Defendants Brooks and Hernandez have not demonstrated they are entitled to immunity under California Government Code section 820.4.[4]

Accordingly, the court will deny Defendants' motion for summary judgment on Plaintiff's claims of intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence.

---

[4] For the same reasons, the court is not persuaded by Defendant Brooks's and Defendant Hernandez's argument that they are entitled to summary judgment on the merits of Plaintiff's intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence claims because Plaintiff was lawfully arrested (Doc. No. 16-1 at 10).

**D.      Negligent Hiring, Retention, Training, Supervision, and Discipline**

The California Tort Claims Act provides that "[e]xcept as otherwise provided by statute[,]" a public entity "is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov. Code § 815; *see also Cochran v. Herzog Engraving Co*., 155 Cal. App. 3d 405, 409 (1984) ("[I]n absence of some constitutional requirement, public entities may be liable *only* if a statute declares them to be liable.") (emphasis in original). A direct claim of negligence against a public entity must be "founded on a specific statute either declaring the entity to be liable or creating a specific duty of care *apart from* the general tort principles embodied in [California] Civil Code section 1714[.]" *de Villers v. County of San Diego*, 156 Cal. App. 4th 238, 251 (2007) (emphasis in original.)

"California courts have held that a public entity cannot be held directly liable for the negligent hiring, retention, or supervision of police officers or other public employees because there is no statutory authority for imposing such liability." *Reel v. City of El Centro*, No. 22-cv-526-W-KSC, 2022 WL 14915608, at *7–8 (S.D. Cal. Oct. 25, 2022); *see also McCullough v. City & Cnty. of San Francisco*, No. 24-cv-03260-JCS, 2024 WL 4353061, at *12 (N.D. Cal. Sept. 30, 2024) ("It appears to be well-established that under California law, there is no statutory basis for alleging a claim of negligent hiring or supervision against a governmental entity."); *Estate of Osuna v. County of Stanislaus*, 392 F. Supp. 3d 1162, 1182 (E.D. Cal. 2019) (noting that "California law does not recognize a general duty of care on the part of supervisors with respect to negligent hiring, retention, or training").

The California Supreme Court has recognized that under some circumstances, a public entity can be held vicariously liable for negligent hiring, retention and supervision by its employees. *C.A. v. William S. Hart Union*, 53 Cal. 4th 861, 865 (2012). "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee or his personal representative." Cal. Gov't Code § 815.2(a). However, a plaintiff must allege a special relationship in order to bring a negligent hiring claim against a

1    public entity. "Absent such a special relationship, there can be no individual liability to third

2    parties for negligent hiring, retention or supervision of a fellow employee, and hence no vicarious

3    liability under section 815.2" *William S. Hart Union*, 53 Cal. 4th at 877; *see also Willis v. City of*

4    *Sacramento*, 2014 WL 1027070, at *6 (E.D. Cal. Mar. 14, 2014) (dismissing negligent hiring,

5    supervision, and retention claim against sheriff due to plaintiff's failure to allege a special

6    relationship with sheriff).

7         Defendant Manteca Police Department moves for summary judgment as to Plaintiff's

8    negligent hiring, retention, training, supervision, and discipline claim on the basis that it is

9    entitled to immunity pursuant to the California Tort Claims Act. (Doc. No. 16-1 at 11.)

10   Specifically, Defendant Manteca Police Department argues that Plaintiff has not alleged a

11   statutory basis for his negligent hiring, retention, training, supervision, and discipline claim. (*Id.*)

12   In his opposition to the pending motion, Plaintiff argues that the statutory basis for direct liability

13   against Defendant Manteca Police Department "finds its life in [sections] 822 and 820.4" of the

14   California Government Code, which "impose liability for negligent and wrongful acts or

15   omissions." (Doc. No. 25 at 9–10.) Thus, Plaintiff argues the California Tort Claims Act is

16   "satisfied insofar as statutes do proscribe the conduct of the officer here." (*Id.* at 10.)

17        Contrary to Plaintiff's argument, California Government Code sections 822 and 820.4 do

18   not provide a basis for direct liability against Defendant Manteca Police Department for negligent

19   hiring, retention, training, supervision, and discipline. As previously discussed, California

20   Government Code section 822 provides that "[a] public employee is not liable for money stolen

21   from his official custody," but is not "exonerate[d] . . . from liability if the loss was sustained as a

22   result of his own negligent or wrongful act or omission." Cal. Gov't Code § 822. Likewise,

23   California Government Code section 820.4 states that "[a] public employee is not liable for his

24   act or omission, exercising due care, in the execution or enforcement of any law," but is not

25   "exonerate[d] . . . from liability for false arrest or false imprisonment." Cal. Gov't Code § 820.4.

26   Neither section imposes a specific duty of care on a public entity related to negligent hiring,

27   retention, training, supervision, and discipline or declares that a public entity can be liable for

28   such a claim. *See de Villers*, 156 Cal. App. 4th at 251. Indeed, Plaintiff fails to cite any authority

21

1    supporting the proposition that California Government Code sections 822 and 820.4 provide a

2    statutory basis for direct liability against Defendant Manteca Police Department for negligent

3    hiring, retention, training, supervision, and discipline. *See Heflin v. County of Los Angeles*, 438

4    Fed. Appx. 596, 597 (9th Cir. Jun. 16, 2011) (affirming the dismissal of a claim against a

5    California county on the ground that the county was not directly liable for its negligent hiring and

6    supervision of a deputy sheriff who allegedly assaulted the plaintiff and explaining that the

7    plaintiff "points to no statutory language supporting a negligent hiring or supervision claim

8    against a public entity"). Because Plaintiff has not identified a statute which imposes direct

9    liability on Defendant Manteca Police Department for negligent hiring, retention, training,

10   supervision, and discipline, this claim fails as a matter of law.

11        To the extent Plaintiff's asserts a vicarious liability claim against Defendant Manteca

12   Police Department based on the conduct of Defendants Brooks and Hernandez, Plaintiff fails to

13   allege—let alone put forth evidence on summary judgment to demonstrate—the requisite facts for

14   such a claim. Plaintiff does not allege that Defendants Brooks and Hernandez were supervisory

15   employees that acted negligently in hiring, retaining, training, supervising, or disciplining

16   employees of Defendant Manteca Police Department. Nor does Plaintiff allege a special

17   relationship between himself and any supervisory employee of Defendant Manteca Police

18   Department. *See Est. of Osuna*, 392 F. Supp. 3d at 1183 ("The question is not whether the

19   arresting officers had a special relationship with the decedent, but rather whether the supervisors

20   responsible for hiring, training, disciplining, and so forth had such a special relationship.");

21   *Kendrick v. Cnty. of San Diego*, 2018 WL 1316618, at *11 (S.D. Cal. Mar. 14, 2018), *aff'd*, 776

22   F. App'x 530 (9th Cir. 2019) ("Plaintiff does not allege a special relationship existed between

23   [decedent] and [sheriff]. Therefore, [the sheriff] cannot be personally liable for a claim of

24   negligent hiring and supervision and consequently, the [c]ounty cannot be vicariously liable under

25   California Government Code section 815.2."). Thus, a claim for negligent hiring, retention,

26   training, supervision, and discipline based on a theory of vicarious liability against Defendant

27   Manteca Police Department still fails as a matter of law.

28        Accordingly, Defendant Manteca Police Department's motion for summary judgment on

1    Plaintiff's negligent hiring, retention, training, supervision, and discipline claim will be granted.

2                                              **CONCLUSION**

3          For the reasons discussed above,

4    1.       Defendants' motion for summary judgment (Doc. No. 16) is GRANTED in part

5              and DENIED in part as follows:

6              a.       Summary judgment is GRANTED in favor of Defendant Brooks and

7                       Defendant Hernandez on Plaintiff's § 1983 claim to the extent that claim is

8                       predicated on Defendants Brooks and Hernandez ordering Plaintiff out of

9                       his vehicle, placing him in handcuffs, detaining him in the back of a patrol

10                      vehicle, or not using a control hold while giving him water;

11             b.       Summary judgment is GRANTED in favor of Defendant Brooks and

12                      Defendant Hernandez on Plaintiff's § 1983 claim predicated on the alleged

13                      theft of Plaintiff's money on the basis of qualified immunity;

14             c.       Summary judgment is DENIED as to Plaintiff's § 1983 claim to the extent

15                      that claim is predicated on the constitutionality of the traffic stop of

16                      Plaintiff;

17             d.       Summary judgment is DENIED as to Plaintiff's claims for conversion,

18                      intentional infliction of emotional distress, negligent infliction of emotional

19                      distress, and negligence;

20             e.       Summary judgment is GRANTED in favor of Defendant Manteca Police

21                      Department on Plaintiff's claim of negligent hiring, retention, training,

22                      supervision, and discipline; and

23    /////

24    /////

25    /////

26    /////

27    /////

28    /////

2.    In light of this order, the court will set a date for a final pretrial conference by separate order.

IT IS SO ORDERED.

Dated:    **October 3, 2025**

Dena Coggins
United States District Judge